UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BERTHOLD L.L.C. and
BERTHOLD TYPE GROUP LLC

    Plaintiffs,

v.

KRYTON INTERNATIONAL INC.,

    Defendant.

Case No. _____

Trial by Jury Demanded

**COMPLAINT**

Plaintiffs Berthold L.L.C. and Berthold Type Group LLC ("Plaintiffs") allege the following against Defendant Kryton International Inc. ("Defendant"):

**INTRODUCTION**

1. This is a copyright infringement case, involving the unauthorized use of at least ten of Plaintiffs' Akzidenz-Grotesk computer programs.

2. Plaintiffs are a software company and type foundry, meaning they create and license computer programs that produce scalable font output on a computer screen or printer. Relevant here are Plaintiffs' programs for the iconic Akzidenz-Grotesk typeface, which they have licensed to *tens of thousands* of companies, including many of the most recognizable brands in the world.

3. Like those other brands, Defendant wanted to use Plaintiffs' iconic Akzidenz-Grotesk font programs for its logo, marketing content, and other materials, but it did not want to pay the license fee for those uses. So, Defendant procured copies of at least eleven of Plaintiffs' computer programs and used them anyway.

4.  Plaintiffs only bring this action after Defendant ignored their repeated attempts to resolve the dispute amicably and were rebuffed.

## JURISDICTION AND VENUE

5.  This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) as this case arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

6.  Jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, Defendant consented to jurisdiction and venue in this District, and Defendant has transacted business within this District.

## THE PARTIES

7.  Berthold L.L.C. is an Illinois limited liability company and the sole owner of the computer programs at issue in this dispute, including the copyright interest therein.

8.  Berthold Type Group LLC is a Delaware limited liability company, an affiliate of Berthold L.L.C., and the beneficial owner of the exclusive right to license Berthold L.L.C.'s copyrighted font programs.

9.  Upon information and belief, Defendant is a Canadian corporation headquartered at 1645 East Kent Avenue, Vancouver, British Columbia, V5P 2S8 Canada.

## FACTUAL ALLEGATIONS

**1. Plaintiffs' Intellectual Property**

10. Plaintiffs develop and license computer programs that render scalable typefaces or "fonts" on a computer screen or printer.

11. Plaintiffs' computer programs constitute valuable intellectual property, the licensing of which forms the core of their longstanding business.

12.     Plaintiffs' most popular products are their computer programs for the famous Akzidenz-Grotesk typeface, which has been called "probably the best typeface ever designed"[1] and which Plaintiffs have licensed to tens of thousands of customers worldwide, including the American Red Cross, the NBC Nightly News, Disney, Fox, ESPN, and many others. As one example, the American Red Cross licensed the right to use one of Plaintiffs' Akzidenz-Grotesk computer programs in its official logo:



13.     Plaintiffs own a total of 174 unique computer programs for the Akzidenz-Grotesk typeface, including the following:

(1)     Akzidenz-Grotesk Pro Light, TX 6-380-799

(2)     Akzidenz-Grotesk Pro Light Italic, TX 6-380-800

(3)     Akzidenz-Grotesk Pro Regular, TX 6-380-794

(4)     Akzidenz-Grotesk Pro Italic, TX 6-380-793

(5)     Akzidenz-Grotesk Pro Medium, TX 6-380-792

(6)     Akzidenz-Grotesk Pro Medium Italic, TX 6-380-795

(7)     Akzidenz-Grotesk Pro Bold, TX 6-380-796

(8)     Akzidenz-Grotesk Pro Bold Italic, TX 6-380-797

(9)     Akzidenz-Grotesk Pro Super, TX 6-380-798

(10)    Akzidenz-Grotesk Pro Super Italic, TX 6-380-786

---

[1] *See* Domenic Lippa, *The 10 Best Fonts*, The Guardian (Sept. 14, 2013) available at www.theguardian.com/theobserver/gallery/2013/sep/14/the-10-best-fonts.

14. True and correct copies of the copyright registration certificates for the above-listed computer programs are attached as <u>Exhibit 1</u>.[2]

15. Another popular line of computer programs created and licensed by Plaintiffs are the programs to render the Imago typeface.

16. Plaintiffs have secured copyright registrations for the Imago computer programs, including for the program entitled "Imago Extra Bold Std.," which was assigned U.S. Copyright Registration No. TX 6-465-040.

17. A true and correct copy of the copyright registration certificate for the above-listed computer program is attached as <u>Exhibit 2</u>.

18. Each of the computer programs listed above is an original work of authorship, fixed in a tangible medium of expression, which was registered with the United States Copyright Office within five years of its first publication and prior to the infringing acts giving rise to this litigation.

19. In line with industry norms, Plaintiffs do not *sell* their computer programs. Rather, Plaintiffs license the use of their programs to paying customers under detailed contractual agreements.

20. Plaintiffs offer three types of licenses: the Basic Desktop License, the Basic Web Font License, and the Enterprise License; but only two are relevant here, the Basic Desktop License and the Enterprise License.

---

[2] The 10 Akzidenz-Grotesk PRO font programs were first published in 2006 in their most complete version including both Western Latin + Central European Character sets. Per Section 512.2(A) of the Compendium of the U.S. Copyright Office Practices, each of the ten (10) Akzidenz-Grotesk Std (Western Latin) font programs used by Defendant are protected by the corresponding PRO copyright registration.

21. A Basic Desktop License *only* permits paying customers to use Plaintiffs' computer programs to create internal business documents, such as company guidelines, policy statements, or internal memoranda. After a customer pays for a Basic Desktop License, it receives a downloadable copy of each computer program covered by the license, which the customer may install on up to five computers at one location.

22. Customers that require any rights beyond the limited uses permitted by the Basic Desktop License or Plaintiffs' similar Basic Web Font License for online content must purchase an Enterprise License.

23. Plaintiffs only offer Enterprise Licenses through direct negotiations, and the license fee depends on each customer's specific needs, including the types of uses that will be permitted, the number of locations where the programs can be installed, and the number of users who will have access.

24. For instance, an Enterprise License may allow a particular customer to use Plaintiffs' computer programs in videos, mobile applications, digital publishing materials, web banners, electronic displays, company logos and more, all uses which are not granted and indeed expressly prohibited by the Basic Desktop License.

25. Plaintiffs' websites and licensing agreements have unequivocal statements putting licensees and the general public on notice that an Enterprise License is required to create anything other than internal company documents on up to five computers at one location, and anyone who purchases a Basic Desktop License from Plaintiffs affirmatively agrees to the terms of the license before the transaction can be completed.

**2.     The Infringement**

26.     Plaintiffs contacted Defendant in early 2021 after discovering that it was using at least ten Akzidenz-Grotesk computer programs in an unauthorized fashion without an Enterprise License.

27.     Plaintiffs later discovered that Defendant was also using at least one of Plaintiffs' Imago computer programs in an unauthorized fashion without an Enterprise License.

28.     On information and belief, Defendant published at least one "Brand Standards Manual" indicating that Akzidenz-Grotesk was the "primary font" for "all external printed materials, such as brochures, advertising, packaging, and case studies."

29.     Defendant's agents admitted that Defendant was using Plaintiffs' computer programs.  *See* Exhibit 3 (a selection of emails between the parties) at p. 1.

30.     Defendant's agents claimed that Defendant purchased a license "many years ago," but they acknowledged it was not an Enterprise License. *See* Exhibit 3 at pp. 1–2.

31.     Defendant's agents requested information about what would be covered by the "upgrade," advising that they wanted to use Plaintiffs' software for at least three different types of content that would require an Enterprise License. *See* Exhibit 3 at p. 3.

32.     Plaintiffs attempted to resolve the matter in good faith, but Defendant became unresponsive, ignoring multiple emails from Plaintiffs and their counsel.

**COUNT I—COPYRIGHT INFRINGEMENT**

33.     Plaintiffs incorporate by reference the allegations of paragraphs 1–32 as if fully set forth herein.

34. Defendant and its agents used various computer programs owned by Plaintiffs without purchasing an appropriate license, including the following works that are validly registered with the U.S. Copyright Office:

    (1) Akzidenz-Grotesk Pro Light, TX 6-380-799

    (2) Akzidenz-Grotesk Pro Light Italic, TX 6-380-800

    (3) Akzidenz-Grotesk Pro Regular, TX 6-380-794

    (4) Akzidenz-Grotesk Pro Italic, TX 6-380-793

    (5) Akzidenz-Grotesk Pro Medium, TX 6-380-792

    (6) Akzidenz-Grotesk Pro Medium Italic, TX 6-380-795

    (7) Akzidenz-Grotesk Pro Bold, TX 6-380-796

    (8) Akzidenz-Grotesk Pro Bold Italic, TX 6-380-797

    (9) Akzidenz-Grotesk Pro Super, TX 6-380-798

    (10) Akzidenz-Grotesk Pro Super Italic, TX 6-380-786

    (11) Imago Std Extrabold, TX 6-465-040

35. Defendant infringed Plaintiffs' exclusive rights under 17 U.S.C. § 106, since the act of using Plaintiffs' Akzidenz-Grotesk computer programs necessarily involved creating copies of those programs and publicly displaying their output.

36. In addition, Defendant infringed Plaintiffs' exclusive rights under 17 U.S.C. § 106 by distributing unsecured copies of documents and other materials containing embedded copies of Plaintiffs' computer programs.

37. These acts were undertaken knowingly, willfully, and with intent because Defendant wanted to use Plaintiffs' iconic computer programs without paying the customary licensing fee.

38. Plaintiffs have been damaged as a result of Defendant's infringement, which deprived Plaintiffs of valuable licensing revenue and diluted the value of Plaintiffs' computer programs, and they are therefore entitled to recover either their actual damages and Defendant's profits or statutory damages, pursuant to 17 U.S.C. § 504.

39. Because Plaintiffs' computer programs were distributed in an uncontrolled manner, they may have been provided to or obtained by third parties, which further harms Plaintiffs' licensing business and dilutes the value of its computer programs.

40. Defendant's infringement caused and is continuing to cause irreparable harm, for which Plaintiffs have no adequate remedy at law, which will continue to occur unless this Court enjoins Defendant from continuing to infringe Plaintiffs' copyrighted works, pursuant to 17 U.S.C. § 502.

41. Plaintiffs are entitled to an Order impounding and compelling the destruction of all materials used or created in violation of its exclusive rights under copyright, pursuant to 17 U.S.C. § 503.

42. Plaintiffs are also entitled to an Order awarding their reasonable attorneys' fees and costs incurred as a result of the infringement pursuant to 17 U.S.C. § 505.

**COUNT II—BREACH OF LICENSE AGREEMENT**

43. Plaintiffs incorporate by reference the allegations of paragraphs 1–42 as if fully set forth herein.

44. On information and belief, Defendant or an agent acting on Defendant's behalf entered into a binding contract with Plaintiffs in the form of a Basic Desktop License.

45. Plaintiffs performed their obligations under the Basic Desktop License.

46. Plaintiffs' Basic Desktop License includes a termination clause at Paragraph 11(b) indicating that the license rights would "immediately and automatically terminate without notice if [Defendant] fail[ed] to comply with any term or condition of this Agreement."

47. Defendant violated the terms of the Basic Desktop License by, *inter alia*, using Plaintiffs' computer programs to create documents and materials that were prohibited by the Basic Desktop License and only permitted by an Enterprise License.

48. On information and belief, Defendant also installed Plaintiffs' programs on more than five computers.

49. As a direct and proximate result of Defendant's breaches of the License Agreement, Plaintiffs have suffered actual damages in an amount to be determined.

50. Under the Paragraph 15 Basic Desktop License, Defendant agreed that any disputes arising out of or related to that agreement would be resolved in the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois.

51. Under the terms of the Basic Desktop License, Plaintiffs are entitled to equitable relief, damages, costs, and attorneys' fees as a result of Defendant's breach.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request and pray that this Court will:

A. Enter judgment in favor of Plaintiffs, finding that Defendant willfully infringed the copyrights in Plaintiffs' computer programs, and to the extent it purchased a Basic Desktop License, it willfully breached that agreement;

B. Permanently enjoin Defendant, its officers, directors, principals, agents, employees, successors, assigns, and all those in active concert or participation with

Defendant from imitating, copying, distributing, or making unauthorized use of Plaintiffs' copyrighted computer programs;

C. Order Defendant to deliver for destruction at Defendant's expense all copies of Plaintiffs' copyrighted computer programs, any unauthorized derivative works based upon Plaintiffs' copyrighted computer programs, and any materials created through the unauthorized use of Plaintiffs' copyrighted computer programs or unauthorized derivative versions of Plaintiffs' copyrighted computer programs, together with any and all computer files, computer programs, or storage mediums on which any of the foregoing may be held;

D. Direct Defendant to pay Plaintiffs' damages, which at Plaintiffs election, shall be an amount representing either: (1) Plaintiffs' actual damages and the additional profits Defendant obtained as a result of the infringement; or (2) statutory damages.

E. Direct that Defendant be required to pay Plaintiffs' attorneys' fees, and costs resulting from the infringement of Plaintiffs' copyrighted computer programs and the breach of any Basic Desktop License it may have purchased;

F. Direct that Defendant be ordered to make a written report within a reasonable period of time to be filed with the Court detailing the manner of compliance with the requested injunctive and mandatory relief above;

G. Award Plaintiffs the costs of this action together with prejudgment interest, reasonable costs, and attorneys' fees; and

H. Award Plaintiffs such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims so triable.

Dated: July 9, 2021                    BERTHOLD L.L.C., *et al.*

                                                                        By: /s/ Peter S. Lubin
                                                                        One of their attorneys

Peter S. Lubin
Patrick D. Austermuehle
LUBIN AUSTERMUEHLE, PC
360 West Butterfield Road, Suite 325
Elmhurst, IL 60126
(630) 333-0333
peter@l-a.law
patrick@l-a.law


Adam Kessel (Kessel@FR.com)
Jon Jekel (Jekel@FR.com)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906


Terrence Buehler
Law Offices of Terrence Buehler
19 S. LaSalle, Suite 702
Chicago, IL 60606
(312) 371-4385
tbuehler@tbuehlerlaw.com